UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MELVIN D. POWELL, individually and
as attorney in fact for SHANNON
SNODGRASS, CONSTANCE S. GOLDEN, CHRIS
CORBITT, LARRY CORBITT, JOHN DENNIS,
DEBBIE DENNIS; JACOB and BRANDY MIRACLE;
TYLER W. SNODGRASS; DANIEL and REGINA
WILEY; MARK A. and MARYBETH PETERS;
BRIAN and BETHANY PORTER; DONALD and
GINA MILLER; JOHN W., JR. and
REBECCA ALKIRE; DINAH K. VASS; UNION
WILLIAMS PUBLIC SERVICE DISTRICT;
BRIDGETT O. MARQUIS; DAVID W. and
JANET L. CORBITT; ANDREW J. STATLER;
NICKI YOUNG; NANCY J. and CHARLES R.
WILLIAMS, as trustees of WILLIAMS
FAMILY TRUST; JONATHAN JAY MULLENIX;
WOOD COUNTY COMMISSION, Attn: Marty Seufer;
PEARL O. GRAHAM; CHARLES R. and NANCY
WILLIAMS; GARY E., JR. and KAYLA D. OATES;
RANDALL L. SAUNDERS; JERRY and EMILY
PERKINS; DEWAYNE PARSONS; STEVEN C.
and GLORIA J. HALL; and JAMES DAVID
and KIMBERLY RUTH ARNOLD,

      Plaintiffs,

v.                                        Civil Action No. 2:18-cv-01180

CSX TRANSPORTATION, INC.,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending are the motion for summary judgment filed by the plaintiffs[1] on August 1, 2019, and the motion for summary judgment filed by the defendant, CSX Transportation, Inc. ("CSXT"), on August 2, 2019.

The motions address the two major issues in this case: (1) The plaintiffs contend, and CSXT denies, that plaintiffs hold the right to a railroad crossing serving their properties that was reserved by the predecessors in title to both the plaintiffs and CSXT; and (2) CSXT contends, and the plaintiffs deny, that it is entitled to close the crossing for safety reasons regardless of who prevails on the first issue.

I. Background

This case concerns the removal and closing by CSXT of a railroad crossing on Princess Lane in Wood County, West Virginia. Compl. ¶¶ 4, 6.  By agreement dated February 21, 1883, R.S. and Mary Corbitt conveyed a right of way on their property to Ohio River Railroad Company for the construction and operation of a railroad ("1883 deed").[2]  Compl. ¶ 1; Def.'s Mot. Summ. J., ECF

---

[1] The term "plaintiffs" throughout this memorandum opinion and order refers to the original plaintiffs in the case that filed the motion for summary judgment at issue herein -- Melvin D. Powell, Shannon Snodgrass, Constance S. Golden, Chris Corbitt, Larry Corbitt, John Dennis, and Debbie Dennis.
[2] The instrument is labeled an agreement.  It is by its terms a deed in which the Corbitts grant and convey a 50-foot right of way

No. 34, Ex. E ("Def.'s Mot."). The plaintiffs have a chain of title back to R.S. and Mary Corbitt. Pls.' Mot. Summ. J., ECF No. 33, Ex. 10 ("Pls.' Mot."); Pls.' Resp. in Opp'n, ECF No. 39, ¶ 2 ("Pls.' Resp."). Ohio River Railroad Company is CSXT's predecessor-in-interest. Def.'s Mem. of Law in Supp. of its Mot. for Summ J. 5, ECF No. 35 ("Def.'s Mem.").

The 1883 deed specifies the grant of the right of way and the obligations of the parties, as follows:

> [S]aid Rail Road Company will make a good crossing over said Road on said land at some point to be designated by said parties of the first part, and will build and keep in repair cattle stops at the point where said Road enters upon said land as well as at the division fence near the Barn on said land if required. The said parties of the first part do hereby grant and convey unto the Ohio River Rail Road Company the full and free right of way of the width of fifty feet for the Road of said Company in, upon, and through the lands of the said R.S. Corbitt & Mary Corbitt, known as the Parker Farm. Said right of way designates substantially as follows to wit: Being the line of road as surveyed and corrected by Engineer Andrews July 24, 1883. Which right of way is hereby granted and conveyed for the construction, building, and use of the Road of the said Company and the said parties of the first part hereby release to the said Company all damages and claims for damages which may in any way be sustained by reason of the construction in building of said Company's Road, and the said ——[3] do also hereby covenant and agree to execute, and acknowledge in due form of law, when required by said Company, a deed conveying to said Company in fee simple the said land herein before described. It is understood and agreed by the parties to this agreement that said Rail Road Company shall build a good and substantial fence along the South line of said Road across said farm. It is understood and agreed that said Rail Road Company shall have and

---

across their property. Consequently, the court, as do the parties, refer to the instrument as a deed.
[3] So in original.

<u>maintain a Flag Station where said Road crosses James Lane, where at least one train, each way, each day, shall stop upon being flaged [sic] for the convenience of said parties of the first part</u>.

**Pls.' Mot., Ex. 1 (emphasis added).**

CSXT, without any evidence to support it, contends that the Corbitts selected, as the "good crossing," the crossing provided for James Lane, a public road. The plaintiffs insist that the "good crossing" is what is now called Princess Lane.

On June 1, 1894, Mary Corbitt conveyed to her son, Samuel T. Corbitt, the land which contains what is known (since about 2000) as the Princess Lane crossing. Pls.' Mot., Ex. 6, 7. The land containing the James Lane crossing was conveyed to Rufus Corbitt. Pls.' Mot., Ex. 7.

The James Lane referred to in the 1883 deed between the Corbitts and the Ohio River Railroad is conceded by the parties to be a public road. Pls.' Mot. 2; Def.'s Resp. in Opp'n to Pls.' Mot. for Summ. J. 6, ECF No. 37 ("Def.'s Resp."). In 1886, the Atlas of Wood County designates James Lane as "Turnpike," and in the limited portion of Wood County reflected in the excerpt of the Atlas filed herein, shows it running from what is designated as "BOREMAN P.O." to "VALLEY MILLS P.O." and on ultimately to the Corbitt property where it crosses the railroad and then runs east through the community of Waverly and beyond. Pls.' Mot., Ex. 8.

The 1911-1914 survey, which is a map by the Ohio River Board of Engineers on Locks and Dams, depicts James Lane, where it crosses the railroad, as bordering the westerly line of Rufus Corbett.[4]  Pls.' Mot., Ex. 9.  That survey also reflects an unnamed road as bordering the easterly line of Rufus Corbett, which is the division line of his property with that designated as being the property of R. N. Corbett (shown as S. P. Corbett on the 1918 map noted next below).  Pls.' Mot., Ex. 9.  That unnamed road is depicted as running parallel with James Lane and is in the vicinity of what is now Princess Lane.  Pls.' Mot., Ex. 9.  Just to the east of R. N. Corbett is shown the Sharp property on which there is another road that runs parallel with the other two roads just noted and, at Sharp's division line with the McKinney property, also crosses the railroad.  Pls.' Mot., Ex. 9.  The Sharp deed, as with still others for nearby properties, contained a provision for "a good crossing."  J. P. Sharp Deed, Pls.' Mot., Ex. 4; McKinney Deed, Pls.' Mot., Ex. 5, at 24; Miller Deed, Pls.' Mot., Ex. 5, at 26; Roloton Deed, Pls.' Mot., Ex. 5, at 29; Sioson Deed, Pls.' Mot., Ex. 5, at 31.  The private crossing constructed from the J. P. Sharp Deed, shown on the 1918 map next below as a

---

[4] The 1911-1914 survey map uses the spelling "Corbett."

"Farm Crossing," still exists today.[5]  Photograph of James Sharp's Crossing, Pls.' Mot., Ex. 15.[6]

CSXT has supplied the 1918 "Right-of-Way and Track Map" of the Baltimore and Ohio Railroad Company (the predecessor railroad of CSXT).  On that map, James Lane is designated "James Lane County Road."  Def.'s Mot., Ex. F.  It is located as running through the Rufus Corbett[7] property, on whose easterly border is shown an unnamed road that crosses the railroad tracks and is designated "Private Rd. Xing," matching the location of Princess Lane.  Def.'s Mot. Ex. F.

CSXT states that the Right-of-Way and Track Map is "constantly updated to be in compliance with the law," so the "map itself does not reflect what the area looked like in 1918." Def.'s Sur-Reply 8 n.10, ECF No. 57.  That conclusion is unwarranted.  The map includes what the area looked like in 1918, together with a number of additions.  These additions consist of two groups.  One group is of three additions, each found in block form, two of which are noted in the lower left corner of the map

---

[5] The court is not provided with evidence as to whether the other private crossings listed previously still exist today.
[6] The photographs in Exhibit 15 are not dated.  However, the photographs appear to be taken after May 10, 2018, because the Princess Lane crossing is closed and barricaded in the photographs.
[7] The 1918 "Right of Way and Track Map" also uses the spelling "Corbett."

where there is shown the year followed by a brief description of the addition which may be tersely stated as set forth parenthetically below:

  1927 (Lahew 12" drain)
  1930 (steel tank replacement)

The third one in block form is found at the end of a graph in the upper portion of the map where there is set forth reference to each of the fifteen 1883 deeds, as well as two 1912 deeds and one 1913 deed, by which the railroad initially acquired the property shown on the map; the third one being shown thereon as the nineteenth deed, dated 1924 and recorded 1927, noted as Lahew "Perpetual right of way for drain."

  The second group is located in the lower right corner of the map and is in chart form entitled "REVISED TO," and immediately below which there is a ladder of slots in which to enter the date each revision is noted as having taken place. There are 14 such dates running from 1922 to 1959. The revisions are not stated.

  It is noted that, under the blocks for the two 1927 and 1930 additions, there has been added, "Continued on typed list." The typed list has not been furnished by CSXT. The only other additions consist of scattered markings in red on the face of the map that denote utilities or the like.

The "Private Rd. Xing" appears to be one of the original entries on the map, though it is possible that it may have come later.

James Lane is again shown on the United States Geological Survey ("USGS") map of 1927 along with what appears to be a parallel road -- Princess Lane -- crossing the railroad in the vicinity of the division line between Rufus Corbitt and S. P. Corbitt (shown as R. N. Corbett on the 1911-1914 survey above).[8] Pls.' Mot., Ex. 13.

In 2018, both the James Lane crossing and the Princess Lane crossing provided access to some twenty-two homes. Pls.' Mot. 3. On May 10, 2018, CSXT removed the at-grade railroad crossing at Princess Lane, barricaded the crossing from both ends, and removed the Princess Lane street sign. Def.'s Mem. 2; Compl. ¶ 4. Plaintiffs assert that the Princess Lane crossing was taken out without notice to the plaintiffs. Compl. ¶ 4. CSXT asserts that it provided notice to what it contends was the only known user of the Princess Lane crossing, Union Williams Public Service

---

[8] The plaintiffs note that the current tax map of the properties also shows the Princess Lane crossing. Pls.' Mot. 7. A disclaimer on the map states that "[t]his product was developed for taxation purposes and is therefore not suitable for legal, engineering, or surveying purposes." Pls.' Mot, Ex. 12.

District, who offered no objections.  Def.'s Mot., Ex. B; Def.'s Mem. 3-4.

CSXT claims it removed the Princess Lane crossing "as part of an initiative designed to enhance safety at public and private at-grade crossings throughout CSXT's system" by eliminating "duplicative at-grade highway-rail crossings" and "diverting traffic to existing crossings, where possible."  Def.'s Mem. 2.  CSXT asserts that it determined that the Princess Lane crossing was rarely used, that there was no deeded right to the Princess Lane crossing, and that the James Lane crossing could properly service the area in question.  Id. at 3.  Since the closing of the Princess Lane crossing, CSXT says that the plaintiffs have been able to access their property "via the James Lane Crossing without incident."  Id. at 2 n.3.  On the other hand, the plaintiffs insist that the Princess Lane crossing removal creates a safety issue by delaying access to emergency vehicles and blocking access to plaintiffs' properties and the sewer lift station during flooding or accidents at the James Lane crossing.  Pls.' Mot. 7-8; Pls.' Mot., Ex. 16.

Plaintiffs filed this action in the Circuit Court of Wood County on July 2, 2018, claiming that removing the crossing constituted a breach of contract.  Compl. ¶ 4.  They seek injunctive relief in the form of "immediate, temporary, and

9

permanent installation and maintenance of the Princess Lane railroad crossing by the Defendant at its expense," as well as an award of "actual damages, punitive damages, and their costs and attorney fees." Compl., at p.4.

CSXT removed the action to federal court on July 24, 2018, pursuant to diversity jurisdiction. The plaintiffs' motion to remand was denied.

Both parties filed a motion for summary judgment, seeking judgment as a matter of law.

## II.  Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.

Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). A party is entitled to summary judgment if the record, as a whole, could not lead a rational trier of fact to find for the non-moving party. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

### III. Discussion

A. The Crossing

Regarding the interpretation of the 1883 deed, both parties claim that the deed is unambiguous. The plaintiffs claim that like the 1883 deed, two separate deeds between the Corbitts and the Ohio River Railroad Company for different properties mention a designated crossing in one section of the deed and requirements for public road crossings in a different section of the deed. Pls.' Mot. 2-3; Pls.' Mot., Ex. 3. Further, the plaintiffs argue that landowners in the surrounding area have deeds with the railroad company containing similar language, which grant a designated crossing over the rail line. Pls.' Mot. 3;

Pls.' Mot., Ex. 4, 5. Based on the aforementioned deeds, the plaintiffs argue that the Princess Lane crossing is the designated private crossing in the 1883 deed. Pls.' Mot. 2. The plaintiffs also contend that the James Lane crossing is mentioned separately in the 1883 deed to reference the requirement for a public road crossing, Pls.' Mot. 2-3, 5; perhaps so, but specifically, James Lane is mentioned as the spot at which the grantors reserved the right to flag down the train once each way each day. The plaintiffs further claim that the 1883 deed mentions two crossings because James Lane was already a public road at the time the railroad was being constructed, requiring the railroad to construct a crossing at James Lane by law.[9] Pls.' Resp. ¶ 1.

CSXT argues that "a good crossing," as used in the 1883 deed, means only one crossing was contemplated by that agreement. Def.'s Mem. 9, 11. As earlier noted, CSXT, without any supporting evidence, argues that R.S. and Mary Corbitt, the makers of the 1883 deed, designated James Lane as that crossing.

The plaintiffs offer the alternative argument that if the deed is ambiguous, the extrinsic evidence shows that Princess Lane is the designated crossing under the deed. See Pls.' Mot. 5-6. They point to two maps of the area that depict, plaintiffs

---

[9] The plaintiffs do not cite the referenced law.

12

say, Princess Lane and the Princess Lane crossing -- the 1911-1914 survey by the Ohio River Board of Engineers on Locks and Dams and the USGS map from 1927. Pls.' Mot. 6-7.

CSXT claims that the plaintiffs have not produced any evidence that the James Lane crossing is not the crossing designated by the Corbitts. Def.'s Mem. 12. Additionally, CSXT points to the following extrinsic evidence to argue that James Lane is the designated crossing in the 1883 deed: (1) a 1978 deed, conveying land originally owned by R.S. and Mary Corbitt, from Stanley N. Vaughan, Sr. and Rowena L. Vaughan to Stanley N. Vaughan, Jr. and Kathleen W. Vaughan ("Vaughan deed"), from which, CSXT claims, it may be inferred that James Lane was the Corbitt's designated crossing under the 1883 deed, (2) the 1918 "Right-of-Way and Track Map" of the Baltimore and Ohio Railroad Company that CSXT claims establishes James Lane as the primary designated crossing for the plaintiffs' properties, (3) the use of James Lane by the plaintiffs and the public for access to the north side of CSXT's rail line, and (4) subsequent deeds in the area that refer to the James Lane crossing as a delineation point. Def.'s Mem., Ex. G; Def.'s Mem. 6, 12; Def.'s Resp. 6.

The extrinsic evidence that CSXT relies upon is unhelpful in determining the designated crossing in the 1883 deed. First, there is no basis for the inference CSXT would draw from

13

the Vaughan deed; rather, the Vaughan deed refers to "a right of way . . . over and across the <u>adjacent</u> land <u>to</u> James Lane." Def.'s Mem., Ex. G (emphasis added). Second, the 1918 "Right-of-Way and Track Map" does not establish James Lane as the primary designated crossing for the plaintiffs' properties because the map also shows Princess Lane as a "Private Rd. Xing." Third, the use of James Lane as a public road by the plaintiffs and the public does not provide any proof that it was the "good crossing" designated by the Corbitts. Fourth, reference to the public road James Lane in other deeds also does not provide any proof that the Corbitts designated James Lane as the "good crossing."

"When a deed expresses the intent of the parties in clear and unambiguous language, a court will apply that language without resort to rules of interpretation or extrinsic evidence." <u>Gastar Expl. Inc. v. Rine</u>, 806 S.E.2d 448, 454-55 (W. Va. 2017). "The determination of whether a deed, contract, or other writing is ambiguous and does not clearly express the intention of the parties is a question of law to be determined by the court." Syl. Pt. 3, <u>Harrell v. Cain</u>, 832 S.E.2d 120 (W. Va. 2019). "'The term "ambiguity" is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning.'" Syl. Pt. 5, <u>Gastar Expl. Inc. v. Rine</u>, 806 S.E.2d 448

14

(W. Va. 2017) (quoting Syl. Pt. 4, Estate of Tawney v. Columbia Nat. Res., L.L.C., 633 S.E.2d 22 (W. Va. 2006)).

Generally, "a court should not consider extrinsic evidence to give meaning to a contract unless the contract terms are vague and ambiguous." Fraternal Order of Police, Lodge No. 69 v. City of Fairmont, 468 S.E.2d 712, 718 n.8 (W. Va. 1996) (citations omitted). "However, if the evidence is not offered to infuse the contract with meaning, but only to demonstrate that a term is (or is not) vague or ambiguous in the first place, then the situation may be different." Id.

"Where there is ambiguity in a deed, or where it admits of two constructions, that one will be adopted which is most favorable to the grantee." Syl. Pt. 6, Paxton v. Benedum-Trees Oil Co., 94 S.E. 472, 472 (W. Va. 1917). "[A]n ambiguous document is always construed against the drafter." Harrell v. Cain, 832 S.E.2d 120, 131 (W. Va. 2019).

Here, there is no ambiguity because the language of the 1883 deed is not reasonably susceptible of two different meanings. When the 1883 deed was made, the parties would necessarily have contemplated that the railroad would provide a crossing at the point where the railroad crossed the James Lane public highway. Had the railroad not done so, it would surely have been promptly

compelled to do it by either the Wood County Commission or the State of West Virginia, or both.

For that reason alone, it is apparent that the "good crossing" referred to in the 1883 deed envisioned a private crossing to be selected by the Corbitts, as was done for other nearby property owners of much smaller tracts than that of the Corbitts. That is why such a crossing shows up on the earliest versions of the governmental and railroad maps available, commencing with the 1911-1914 survey by the Ohio River Board of Engineers, and confirmed by the 1918 map of CSXT's predecessor railroad and the 1927 USGS map. The parties to the 1883 deed and their assignees thus put their own interpretation on the language in that agreement by the private crossing that is shown on those maps, dating from more than a century ago.

The 1883 deed and deeds from the surrounding area use the same or similar language, so it is apparent that CSXT's predecessor-in-interest, Ohio River Railroad Company, drafted the deeds for each property affected by the construction of the rail line. Even if the 1883 deed were determined to be ambiguous, the 1883 deed would still have to be construed against the drafter, CSXT.

Inasmuch as there is no genuine issue of material fact as to the location of the "good crossing" in the subject 1883 deed from the Corbitts to the Ohio River Railroad Company, the court concludes that the "good crossing" to be provided to the Corbitts under the 1883 deed from the Corbitts to the Ohio River Railroad Company is what is now known as the Princess Lane crossing.

B. <u>The Closing</u>

In CSXT's reply in support of its motion for summary judgment, CSXT argues that it has the right to close the crossing, regardless of contractual obligations, because "CSXT's initiatives to enhance safety by reducing crossings" are necessary to avoid subordinating public to private interests. Def.'s Reply Mem. of Law in Supp. of its Mot. for Summ. J. 6-7, ECF No. 42 (quoting <u>Harper v. Va. Ry. Co.</u>, 86 S.E. 919, 921 (W. Va. 1915) (holding that specific performance of covenants that run with the land are void if the covenant "subordinate[s] public to private interests, or would so hamper the railway company that it could not properly discharge its duties to the public in general")). Plaintiffs respond that CSXT has not met its burden of proof to show that the covenant is so unduly burdensome as to void the covenant. Pls.' Mem. of Law 1-2, ECF No. 56 (citing <u>Harper</u>, 86 S.E. at 920).

Generally, the same principles apply to and govern railroad contracts as any other contract. <u>M.M. & D.D. Brown v. W. Md. Ry. Co.</u>, 99 S.E. 457, 459 (W. Va. 1919). "There is a qualification to be made, however, where the specific performance of a railroad contract is sought: Equity may decline to exercise its coercive power in that respect if to do so will injuriously affect the performance by the railroad of its full public duties." <u>Id.</u> (citing <u>Harper</u>, 86 S.E. at 921). On the other hand, "unless a contract clearly contravenes [a] public right or public welfare[,] it should generally be enforced." <u>Keystone Mfg. Co. v. Hines</u>, 102 S.E. 106, 108 (W. Va. 1920).

The underlying material facts respecting the propriety of the closing for safety reasons are in genuine dispute. Until these facts are found, the court cannot decide whether CSXT has the right to close the Princess Lane crossing regardless of its contractual obligations.

### IV. <u>Conclusion</u>

Accordingly, it is ORDERED as follows:

1. The plaintiffs' motion for summary judgment is granted as to the issue of Princess Lane being the "good crossing" in the 1883 deed;

2. The defendant CSX Transportation Inc.'s motion for summary judgment is denied as to the issue of James Lane being the "good crossing" in the 1883 deed; and

3. The motions for summary judgment are denied as to the issue of whether CSXT has the right to close the Princess Lane crossing regardless of its contractual obligations.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: May 27, 2020

John T. Copenhaver, Jr.
Senior United States District Judge